SJOERD TUNESMA

*v.*

PETER SCHUTTLER.

*Filed at Ottawa May 15, 1885.*

1. CHANCERY—*jurisdiction to enforce legal rights, as distinguished from those which are merely equitable.* It does not follow that because rights are legal ones they are not cognizable in a court of equity. If there are any equitable conditions authorizing that court to act at all, it will, if necessary to do complete justice, enforce legal as freely as equitable rights. In exercising its jurisdiction when it has once attached, it is wholly immaterial whether the rights to be enforced are purely legal or are merely equitable in their character.

2. SAME—*stockholders' liability—enforcement in chancery—to the exclusion of the remedy at law.* A bill filed by certain creditors of an insolvent banking corporation, on their behalf and for all other creditors, against the several stockholders in the same, alleged the insolvency of the bank, a deficiency in assets to pay its creditors, the personal liability of stockholders, under the charter, to the depositors and creditors, the existence of some nine hundred unpaid depositors, some of whom were seeking, by separate suits at law, to get an advantage over the others, and that such separate litigation would waste and exhaust the proceeds of this liability of stockholders, the only fund to which depositors could look for payment, and asking to have an account taken of all the liabilities of the bank, and establish the amount for which the various stockholders were liable personally, and to have the amount of the debts proven apportioned among the stockholders: *Held,* that the bill clearly showed a case for equitable relief, and gave the court jurisdiction of the subject matter.

3. The fundamental principle upon which bills of this kind are maintained, is, equality of benefit and burden among a numerous class of persons similarly situated, in respect to a particular fund. The principle that equality is equity, is one of the most fruitful sources of equity jurisdiction.

4. SAME—*conclusiveness of decree in such a case, both as to persons and remedies.* A decree of a court of equity fully adjudicating and settling the extent of the personal liability of all the stockholders of an insolvent corporation, upon a proper bill filed for that purpose by certain creditors, for themselves and all other creditors who might come in and prove their demands, is binding and conclusive upon all creditors making themselves parties to the suit, no matter if it may be erroneous, in all collateral suits and proceedings.

5. So in this case, a bill was filed by certain creditors of an insolvent bank, in behalf of themselves and all other creditors, seeking the appointment of a receiver, etc., under which one was appointed, and an order or decree was rendered therein directing the receiver to pay to the creditors seventy per cent of the par value of their claims. After this, an amended and supplemental bill was filed, making the bank and all its stockholders parties, and asking for a decree to compel the stockholders to pay a sum sufficient to discharge the balance of the debts, and the receiver filed a similar petition. During the pendency of the three last bills, a creditor of the bank, not a party to the bill by name, came in and received his dividend of seventy per cent from the receiver. The court then referred the case to the master, who, after having given notice to all persons to prove their claims, found the amount of the same, and the amount of the deficiency of the assets coming to the receiver,—which finding was approved, and the stockholders decreed to pay a certain amount which was required to satisfy all the debts in full, which was done, and the stockholders discharged from further liability: *Held,* that the final decree was binding upon such creditor who came in and received his dividend, the same as if he had been a party by name, and that such decree was a bar to any suit at law by him against a stockholder who had paid his share under the decree.

APPEAL from the Appellate Court for the First District;— heard in the court on appeal from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

This was an action brought by the appellant, in the circuit court of Cook county, against the appellee, as a stockholder of the late German Savings Bank of Chicago, to recover a balance of $2624.88 due him as a depositor of said bank. The action is founded on the 9th section of the charter of the bank, which is as follows: "When default shall be made in the payment of any debt or liability contracted by said corporation, the stockholders shall be held individually responsible for an amount equal to the amount of the stock held

by them, respectively; and such liability shall continue until six months after an assignment of the stock, and publication of a notice thereof in a newspaper published in the city of Chicago."

To the declaration, which showed a *prima facie* right of recovery, the defendant filed, among others, the following plea, which is designated in the record as the fourth amended plea:

"And for a further plea in this behalf, the defendant says. that the plaintiff ought not to have his aforesaid action against. him, the defendant, because he says that heretofore, to-wit, on the 7th day of December, 1877, the said German Savings Bank ceased to do business, and thereupon, on said day, in the Superior Court aforesaid, one Herman G. Berls and other creditors of said bank, on behalf of themselves and of all other creditors of said bank, filed their certain bill of complaint, on the chancery side of said court, against said company, praying that a receiver of the assets and property of said bank be appointed, and that said bank be declared insolvent, and its affairs wound up, its assets collected and its. debts paid under the direction of said court; that thereupon such proceedings were had in said court that on the 8th day of December, 1877, said bank was by said court declared to be insolvent, and one Oliver H. Horton was by the order of said court appointed receiver of said bank, of all its property and assets, and empowered to collect and dispose of the same for the purposes as prayed in said bill; that thereupon such proceedings were had in said court that by an order therein entered on the 27th day of June, 1882, said receiver was authorized and directed, out of the moneys then in his hands, to pay unto the creditors of said bank a dividend of seventy per cent upon the par value of their respective claims; that afterwards, to-wit, on the 3d day of July, 1882, the said complainant, Berls, and others, for themselves and all other creditors of the said bank, filed in said cause, in the court

aforesaid, their amended and supplemental bill, making the said bank, and all stockholders thereof at the time of its insolvency aforesaid, including this defendant, Peter Schuttler, parties defendant thereto, and alleging the incorporation of said bank, and the acceptance of its charter, the insolvency of the said bank, the insufficiency of its assets then in the hands of the said receiver to pay its debts, and setting up the liability of said stockholders for the deficiency thus arising, as the said plaintiff has in his above declaration set out, and praying that the said defendant stockholders might be required to pay such deficiency by reason of such liability; that thereupon, on the 5th day of July, 1882, the said receiver filed his petition in said cause, setting forth, substantially, the same facts in said amended supplemental bill set forth, to which petition said stockholders, including this defendant, Peter Schuttler, were made parties defendant, and praying that any decree upon said amended and supplemental bill be made payable to him, the said receiver, for the benefit of all the creditors of the said German Savings Bank, and praying for the instruction of the court in the premises; that thereupon such proceedings were had, on the —— day of July, 1882, the said creditors of said bank, who had also brought suits at law against the individual stockholders, as above set out, were, by preliminary injunction of said court, restrained from further prosecution of said suits until the final hearing of said cause; that during the pendency of said supplemental and amended bill, to-wit, on the 21st day of July, 1882, the said plaintiff asked for and received from the receiver in the said cause the sum of $3062.34, as and for his dividend of seventy per cent upon its par value upon his said claim against the said bank, which said dividend was then paid by said receiver out of the assets of the said bank itself; that afterwards issues were joined upon said amended and supplemental bill and petition, and such proceedings were had by the said court that on the 27th day of January, 1883, upon the hearing of

said cause upon said amended and supplemental bill and the petition of said receiver, the court found the facts to be as set out in said amended and supplemental bill, and it was theretofore decreed by the said court that the said defendant stockholders, including this defendant, Peter Schuttler, were liable for the debts and liabilities of said bank to its creditors, as set forth in said amended and supplemental bill and peti- tion, and as said plaintiff has in his said declaration above set out, and that the said Peter Schuttler was liable in the sum of $5000. It was further decreed by the court, before entering the final decree in said cause, that the same be re- ferred to Benjamin D. Magruder, master in chancery in said court, to ascertain the amount due the creditors of said bank, and the amount necessary to defray the expenses of closing up said proceedings, and the amount necessary to pay such claims as might be proven against said bank. And it was further ordered, as follows: That said master shall give notice, by publication in the 'Chicago Daily News,' and the 'Illinois Staats Zeitung,' to all the creditors of the German Savings Bank to appear before him on or before a certain day, not less than twenty days from the date of such notice, to be by him fixed, and prove and establish their claims and the amount due them, and the said master shall thereupon report to this court his conclusions, together with the evidence taken by him touching the same; that thereupon the said master gave the notice in the manner and form required by the said decree, beginning on February 1, 1883, and fixed the 24th day of February, 1883, and all intervening days, as the time, and his office in Chicago as the place, for the cred- itors of said bank to prove their claims against the same; that afterwards, by an order of said Superior Court in said cause, the time for proving such claims was extended until March 16, 1883; that on May 5, 1883, the said master duly filed in said Superior Court his report of said claims, etc., as required by said decree of January 27, 1883, and setting

forth the notice given by him in pursuance thereof, as afore-said; and thereupon such proceedings were had in said cause that on the 27th day of May, 1883, it was decreed by said Superior Court in said cause, that said report be approved, and that the assets of said bank were insufficient to pay the claims of said bank so proven and allowed; that the said Oliver H. Horton, the said receiver, for the use of all the creditors of said bank, have and recover from the stockholders of said German Savings Bank who were defendants in said cause, and including this defendant, Peter Schuttler, the sum of four thousand six hundred and four dollars and seventy-five cents ($4604.75,)—the amount of such deficiency; and that upon payment thereof to him, the said Horton should satisfy the said judgment against all of said stockholders, including this defendant, Peter Schuttler, as a final release of the liability of the said stockholders. And it was further ordered, that if any stockholder shall pay more than his *pro rata* share according to the amount of said stock held by him, he should be entitled to contribution from the other of said stockholders, and may apply to this court and have relief in this cause; that afterwards, to-wit, on the 14th day of July, 1883, the said Horton, as such receiver, received payment of said sum of '$4604.75 from said stockholders, including this defendant, and entered due and full satisfaction of said judgment and decree upon the records of said Superior Court in said cause, and acknowledged therein that he had received payment thereof from the said stockholders, including this defendant, Peter Schuttler, and that such payment was in full of all such liability of such stockholders and this defendant, Schuttler, as by the record thereof still remaining in the said Superior Court, and by a duly certified copy of said amended and supplemental bill, the two decrees of said court therein, and the receipt of said Horton hereto attached, marked 'Exhibit A,' and made part hereof, more fully appears, which said judgment and record still remains in full force,—and this the

11—114 ILL.

defendant is ready to verify by the said record, whereof he prays judgment if the plaintiff ought to have his aforesaid action," etc.

To this plea the plaintiff replied that "he had no knowledge of the proceedings had under and in pursuance of said supplemental bill and receiver's petition mentioned in said plea, and was not a party thereto, and received none of the benefits. arising therefrom, and that said court of chancery had no jurisdiction of this plaintiff nor of the subject matter constituting the plaintiff's cause of action herein," etc.

The court sustained a demurrer to the replication, and the plaintiff declining to make any other or further answer to the plea, judgment was thereupon entered against him for costs, which having been affirmed by the Appellate Court for the First District, the plaintiff appealed to this court.

Mr. John W. Lanehart, and Mr. John P. Altgeld, for the appellant :

The doctrine that where there are many parties interested in a common fund, any one may commence an action on behalf of himself and all others without naming them, and that the chancellor in such a case may require all to establish their claims within a specified time, failing in which they will be barred, is not new. It is discussed and clearly stated in *Hallett* v. *Hallett*, 2 Paige's Ch. 16. This, in fact, is the leading case on this subject, and is the authority relied on by Barbour in his work on Parties, as well as by other writers. But the court there distinctly says that in all this class of cases the proceedings are *in rem*,—*i. e.*, are against a fund in the hands of the court, as, for example, the assets of the bank in the hands of the receiver. But in the present case the liability of the stockholders did not constitute a fund in the hands of the court, and under the control of the receiver, for the receiver represented the bank. He could sue for and collect any money due the bank, but the liability of the stock-

holders did not run to the bank, and the bank never could enforce it; and if the bank could not, the receiver could not, for he represented only the bank. He could not act in a dual capacity, and represent both the bank and its creditors.

Mr. EUGENE E. PRUSSING, for the appellee:

The circuit court, in chancery, had jurisdiction of the person of appellant, although he was not a party by name. Story's Eq. Pl. secs. 97, 99; Barbour on Parties to Action, 553; Freeman on Judgments, sec. 157; *Ryan* v. *Lynch,* 68 Ill. 160.

That court had jurisdiction of the subject matter of the proceedings under the amended and supplemental bill. *Wincock* v. *Turpin,* 96 Ill. 135; *Eames* v. *Doris,* 102 id. 350.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The decision of this case depends entirely upon the sufficiency of the fourth amended plea, for if it does not present a defence to the action, the demurrer should have been sustained to it, and not to the replication, as was done. On the other hand, if the plea is good, it is quite clear the replication affords no answer to it. Its sufficiency, of course, depends upon the validity of the proceedings under the original bill and supplemental bill, mentioned in the plea,—or, differently expressed, upon whether the court had jurisdiction of the person and subject matter of the suit in those proceedings.

With respect to the proceedings and orders made under the original bill, up to the time of filing the supplemental bill, their regularity and validity do not seem to be questioned. The controversy relates entirely to what was done under the supplemental bill, the contention of appellant being that the rights of depositors, under the 9th section of the charter, are purely legal, and enforcible only in a court of law. It may be conceded that the rights in question are purely legal, as contradistinguished from equitable, rights, but it does not neces-

sarily follow that they are cognizable in a court of law only, for when equitable conditions are present authorizing a court of equity to act at all, it will, if necessary to do complete justice, enforce legal as freely as equitable rights. In exercising its jurisdiction, when it has once attached, it is wholly immaterial whether the rights to be enforced are legal or equitable.

*Wincock* v. *Turpin*, 96 Ill. 135, is cited as an authority against the jurisdiction of a court of equity to enforce the rights of depositors under a charter provision similar to the one now under consideration. It is true the bill in that case was for the purpose of enforcing a liability of the same kind as that now under consideration, and that the right to relief, under the bill as framed in that case, was denied; but the case does not decide that a bill will not lie in any case to enforce this liability. The very contrary is, in effect, admitted. Thus it is said: "It may be a state of facts might exist which would authorize a court of equity to bring before it all the stockholders and depositors, and determine their rights and adjust equities, marshal the fund, and distribute it *pro rata;* but no such case is made by this bill, and until such a case shall be made we must leave the depositors to pursue their remedies under the law." That case was disposed of in the court below upon a demurrer to the bill. The chancellor being of opinion sufficient was shown to warrant the relief prayed, a decree was entered accordingly. On appeal to this court the decree was reversed, this court being of opinion that the case made by the bill was not sufficient to warrant the court to interfere with the depositors in pursuing their legal remedies, and this is all that is really decided by that case. It is there distinctly said: "This bill is singularly indefinite as to the manner or the grounds of liability of the stockholders. It is not alleged that they are liable for the unpaid balance of their stock, or under the clause in the charter which renders shareholders liable to the depositors to the amount of the shares of stock held by them, or that their liability

was not incurred in some other manner. The bill is too indefinite, vague and uncertain to sustain a decree granting the relief sought." Thus it will be seen the decision itself is confined within very narrow limits, and that it was concurred in by a bare majority of the court. It is true the argument of the court, as is most always the case, takes a somewhat wider range; but it is well understood, and hardly necessary to be repeated, that the general expressions in an opinion not necessary to a decision of the case, are always to be limited by the facts directly in issue.

With the language of the opinion in that case thus limited, we see nothing in it to justify the conclusion that a bill of this kind will not lie under any circumstances, but, as already stated, the very contrary is conceded. All doubt on this question, however, is completely removed by the later case of *Eames* v. *Doris*, 102 Ill. 350, which expressly holds that a bill of this kind will lie, so that the only question now is, so far as the present inquiry is concerned, do the facts stated in the bill under consideration bring the case within the general principle or rule established by that case? We have no hesitancy in saying they do. The insolvency of the bank, deficiency in assets to pay creditors, the personal liability of stockholders to the depositors, the existence of some nine hundred unpaid depositors, some of whom were trying, by separate suits at law, to get an advantage over the others, and that such separate litigation would waste and exhaust the proceeds of this liability of the stockholders, the only fund to which depositors could look for payment, is all clearly stated in the bill. This was sufficient. The fundamental principle upon which bills of this kind are maintained, is equality of benefit and burden among a numerous class of persons similarly situated, in respect to a particular fund. The principle that equality is equity, has its foundations deeply laid in equity law, and is one of the most fruitful sources of equity jurisdiction.

The proceedings set forth in the ·plea seem to have been conducted with special reference to those in the *Eames-Doris. case, supra,* which have received the approval of this court, and we are fully satisfied with all that was said in that case. That the liability of the stockholders of the German Savings Bank, under the 9th section of its charter, was adjudicated and settled by the final decree in the proceedings under consideration, is not to be denied, and it must be conceded, if the court had power and jurisdiction, as against the appellant, to render it, it is wholly immaterial whether the decree is erroneous or not, for until reversed or otherwise annulled and set aside, it is just as binding in the one case as the other.

Having reached the conclusion that the matter set up in the supplemental bill was equally cognizable in a court of equity with that disclosed by the original bill, it follows there is no ground for the claim of appellant, so far as it is based· upon the difference in the subject matter of the two bills, that he may be bound by what was done under the one, and yet not be bound by what was done under the other. Upon filing the supplemental bill July 3, 1882, the two bills in effect became one bill, as much so as if the new matter had been engrafted upon the original bill by way of amendment. (*Gillet* v. *Hall,* 13 Conn. 426; *Hill* v. *Hill,* 10 Ala. 527.) After this, to-wit, on the 27th of the same month, appellant came in and accepted of the receiver his *pro rata* share of the money then in the receiver's hands for distribution, under an interlocutory order in the cause. While his name was not mentioned in the bill, either as plaintiff or defendant, yet the suit was commenced on his behalf as much as it was on behalf of the complainants expressly named, and by coming in and proving his interests he was entitled to the same benefits of the litigation, in proportion to the amount of his claim, as they were. This right appellant exercised under the first order of distribution, and if he subsequently neglected his interests, as he appears to have done, he must abide the

consequences. By coming in and availing himself of part of the fruits of the litigation he took the position of a complainant in the bill, and in doing so he is conclusively presumed to have had notice of all steps taken in the case up to that time, and having taken the position of a complainant, he can not be heard to set up his ignorance of what occurred in it afterwards.

For the reasons stated, we are of opinion the judgment of the trial court was in conformity with the law, and that consequently it was properly affirmed by the Appellate Court.

*Judgment affirmed.*