ISAAC GOLDBERG, TRADING, ETC., PROSECUTOR, v. WILLIAM B. MACKAY, JUDGE, ETC., AND RELIABLE SILK YARN COMPANY, DEFENDANTS.

Argued January 21, 1931—Decided February 24, 1931.

Before Justices PARKER, CAMPBELL and BODINE.

For the prosecutor, *Filbert L. Rosenstein.*

For the defendants, *David L. Cole.*

The opinion of the court was delivered by

PARKER, J.   This is a writ of *certiorari* directed to the judge of the Circuit Court and bringing up an order made by him by virtue of the Arbitration act of 1923 (*Pamph. L., p.* 291), which in section 3 authorizes the judge under certain circumstances, where there is a provision in a written contract to settle by arbitration a controversy thereafter arising out of the contract or the refusal to perform the whole or any part thereof (section 1), "that such arbitration proceed in the manner provided for in such agreement" (section 3).

The conceded facts are that Goldberg signed two written contracts with the defendant Reliable Silk Yarn Company for the purchase of silk on certain terms not now material, and containing the two following paragraphs:

"All disputes arising out of this contract must be arbitrated in accordance with the arbitration rules of the Silk Association of America.

"All of the provisions of the rules of the Silk Association of America and its divisions, as far as consistent with the foregoing and applicable to the merchandise covered by this contract, are hereby made a part hereof."

Just what the disputes are does not appear and is not material; but the Reliable company pressed for an arbitration, and, as provided in the act, filed a petition to the Circuit Court, praying for an order to have the arbitration proceed; the judge made such an order; later he opened it and allowed a further hearing, and after that hearing, made the same order again and granted exceptions, whereupon this writ of *certiorari* was allowed.

We consider that there was error in making the order here complained of.   The statute provides that upon petition and

notice by "a party aggrieved by the failure, neglect or refusal of another to perform under an agreement in writing providing for arbitration" * * * "the justice or judge shall hear the parties, and upon being satisfied that the making of the agreement or such failure to comply therewith is not in issue, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the agreement * * * be in issue, an order shall be made directing a summary trial thereof. Where such an issue is raised, the party alleged to be in default may * * * demand a jury trial of such issue, and if such demand be made, the justice or judge shall make an order referring the issue or issues to a jury called and impanelled in the manner provided for the trial of actions at law * * *."

The order adjudged that the making of the agreement was not in issue, and we find that in this respect it was erroneous, and it therefore follows that there was error in directing the arbitration to proceed over the demand for a jury trial of the issue.

It is true, as we have said, that prosecutor, Goldberg, signed the two agreements, but the judge seems to have ignored the testimony of prosecutor with respect to the circumstances leading up to his signature to the agreement. It appears, without dispute, that he is totally blind; that he was asked to sign the two contracts above mentioned, both of which, as appears above, incorporate, by reference, the rules and regulations of the Silk Association of America and its divisions. Goldberg made an affidavit, and apparently this affidavit is not contradicted, that when the contracts were presented to him for signature they were read to him and he noticed this reference to the rules of the Silk Association of America, asked, in effect, what those rules provided, and was put off with the general statement that it was a mere formality, and that the arbitration under those rules would take place in the usual way. The language of the affidavit is "that it was nothing; that it was only a formality, and that it was just a regular arbitration." Then follow some

statements as to certain things in the rules that were not told to him, and particularly provisions with reference to choice of a third arbitrator.

This seems to present the situation treated a number of times in our cases, in which a party had been induced to sign a written contract, not by silence with respect to its contents, but by actual misrepresentation of those contents. In that class of cases the instrument is unenforceable even in a court of law. *Alexander* v. *Brogley*, 63 *N. J. L.* 307; *Dunston Lithograph Co.* v. *Borgo*, 84 *Id.* 623; *McDonald* v. *Central Railroad Co.*, 89 *Id.* 251. We do not overlook the fact that the main agreement was for the purchase of silk, had been partly performed, and that the agreement to arbitrate was simply a feature of it, although an important one. But any question of repudiating the whole agreement is immaterial here. If the claim of prosecutor about the arbitration clause is well founded, it seems that he might apply to a court of equity to reform that clause on account of fraud. *O'Neill* v. *Clark*, 33 *N. J. Eq.* 444; *Fowler* v. *Vreeland*, 44 *Id.* 268. The particular issue in this case contemplated by the statute of 1923 under consideration, is the issue whether prosecutor ever really made such an agreement to arbitrate as is sought to be enforced, *i. e.*, incorporating the rules of the New York Silk Association. The argument of respondent, that the agreements are primarily for the purchase of silk, and that the making of such agreements is not in issue, ignores the real object of the statute. What the statute is dealing with is not an agreement to buy silk, but an agreement to arbitrate; and it is quite clear that the agreement to arbitrate included in the main contract is distinctly in issue. This is called in secton 1 of the statute "a provision in a written contract to settle by arbitration a controversy thereafter arising out of the contract," but does not differ from the "agreement in writing providing for arbitration" mentioned in section 3.

As to the legal existence of such a provision, there was an issue raised by the affidavit of fraudulent procurement, and when demand was properly made for the trial of that issue

.by a jury, it was the duty of the judge to summon a jury to try it.

The order brought up will be set aside, with costs, to the end that the issue whether there was a valid assent to the arbitration according to the terms of the contracts, be tried by a jury.